**Nos. 25-2497, 26-1002**

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

E.K., BY AND THROUGH PARENT AND NEXT FRIEND LINDSEY KEELEY, et al.,
*Plaintiffs-Appellees/Cross-Appellants*

v.

DEPARTMENT OF DEFENSE EDUCATION ACTIVITY, et al.,
*Defendants-Appellants/Cross-Appellees*

Appeal from the U.S. District Court for the Eastern District of Virginia,
Hon. Patricia Tolliver Giles, U.S. District Court Judge

# REPLY BRIEF FOR APPELLEES/CROSS-APPELLANTS

MATTHEW W. CALLAHAN
EDEN HEILMAN
ACLU OF VIRGINIA FOUNDATION
P.O. BOX 26464
RICHMOND, VA 23261
(804) 644-8080
mcallahan@acluva.org
eheilman@acluva.org

EMERSON J. SYKES
ACLU FOUNDATION
125 BROAD STREET, 18TH FLOOR
NEW YORK, NY 10004
(212) 549-2500
esykes@aclu.org

COREY M. SHAPIRO
WILLIAM E. SHARP
ACLU OF KENTUCKY FOUNDATION
325 W. MAIN STREET, SUITE 2210
LOUISVILLE, KY 40202
(502) 581-9746
corey@aclu-ky.org
wsharp@aclu-ky.org

*Counsel for Plaintiffs-Appellees/Cross-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION AND SUMMARY OF THE ARGUMENT ........ 1

ARGUMENT ........ 2

I. PLAINTIFFS HAVE ESTABLISHED AND MAINTAINED STANDING. ........ 2

a. The Government has repeatedly attempted to raise the bar for standing to challenge book removals. ........ 3

b. Plaintiffs are suffering actual, ongoing, concrete constitutional injuries. ........ 5

II. PLAINTIFFS ARE ENTITLED TO A SYSTEM-WIDE INJUNCTION. ........ 10

a. The District Court abused its discretion by denying DoDEA-wide relief on the basis that Plaintiffs did not bring a facial challenge ........ 12

b. The District Court abused its discretion by denying DoDEA-wide relief on the basis that DoDEA-wide relief was the equivalent of a nation-wide or universal injunction. ........ 12

CONCLUSION ........ 17

CERTIFICATE OF COMPLIANCE ........ 19

# TABLE OF AUTHORITIES

**Cases**

*ACLU of Florida, Inc. v. Miami-Dade County School Board*,
557 F.3d 1177 (11th Cir. 2009) ....................7

*Ambach v. Norwick*,
441 U.S. 68 (1979)....................9, 10

*Board of Education Island Trees Union Free School District No. 26 v. Pico*,
457 U.S. 853 (1982)....................6

*Book People, Inc. v. Wong*,
91 F.4th 318 (5th Cir. 2024)....................6

*Case v. Unified School District No. 233*,
895 F. Supp. 1463 (D. Kan. 1995) ....................9

*Centro Tepeyac v. Montgomery County*,
722 F.3d 184 (4th Cir. 2013)....................12

*Counts v. Cedarville School District*,
295 F. Supp. 2d 996 (W.D. Ark. 2003) ....................8

*Elam v. Early*,
138 F.4th 804 (4th Cir. 2025)....................11

*Minarcini v. Strongsville City School District*,
541 F.2d 577 (6th Cir. 1976)....................6

*Monteiro v. Tempe Union High School District*,
158 F.3d 1022 (9th Cir. 1998) ....................7

*Mozert v. Hawkins County Board of Education*,
827 F.2d 1058 (6th Cir. 1987)....................6

*Northwest Association of Independant Schools v. Labrador*,
166 F.4th 1148 (9th Cir. 2026)....................6

*Penguin Random House LLC v. Gibson*,
796 F. Supp. 3d 1052 (M.D. Fla. 2025)....9

*Penguin Random House LLC v. Gibson*,
No. 25-13181 (11th Cir. Sept. 12, 2025) ....9

*Perry v. Judd*,
471 F. App'x 219 (4th Cir. 2012)....11

*Plyler v. Doe*,
457 U.S. 202 (1982)....9, 10

*Reporters Committee for Freedom of the Press v. Rokita*,
147 F.4th 720 (7th Cir. 2025).... 14, 15

*Retail Energy Advancement League v. Brown*,
175 F.4th 551 (4th Cir. 2026)....11

*Right to Read Defense Committee of Chelsea v. School Committee of City of Chelsea*,
454 F. Supp. 703 (D. Mass. 1978) ....8

*Roberts v. Madigan*,
702 F. Supp. 1505 (D. Colo. 1989)....7

*Roberts v. Madigan*,
921 F.2d 1047 (10th Cir. 1990)....7

*Salvail v. Nashua Board of Education*,
469 F. Supp. 1269 (D.N.H. 1979) ....8

*Sheck v. Baileyville School Committee,*
530 F. Supp. 679 (D. Me. 1982) ....8

*Shelton v. Tucker*,
364 U.S. 479 (1960)....9

*South Carolina Coastal Conservation League v. U.S. Army Corps of Engineers*,
127 F.4th 457 (4th Cir. 2025)....................12

*South Carolina State Conference of NAACP v. Weaver*,
No. 25-2216, 2026 WL 1957010 (4th Cir. July 7, 2026)....................3, 6

*Stinson v. Fayetteville Sch. Dist. No. 1*,
No. 26-1722 (8th Cir. Apr. 17, 2026)....................15

*Stinson v. Fayetteville School District No. 1*,
824 F. Supp. 3d 792 (W.D. Ark. 2026)....................15

*Suarez-Valenzuela v. Holder*,
714 F.3d 241 (4th Cir. 2013)....................11

*Sund v. City of Wichita Falls*,
121 F. Supp. 2d 530 (N.D. Tex. 2000)....................8

*Terminiello v. City of Chicago*,
337 U.S. 1 (1949)....................10

*TransUnion v. Ramirez*,
594 U.S. 413 (2021)....................4

*Trump v. CASA*,
606 U.S. 831 (2025).................... 12, 14, 15

*Virden v. Crawford County*,
No. 2:23-CV-2071, 2024 WL 4360495 (W.D. Ark. Sept. 30, 2024)....................8

**Other Authorities**

Caitlin Dunham, *It Takes a Family: How Military Spousal Laws and Policies Impact National Security*, 11 Journal of National Security Law & Policy 291 (2021)....................14

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

In February 2025, Department of Defense Education Activity ("DoDEA") families were informed that Black History Month was cancelled and DoDEA was in the process of scrubbing its curriculum of anything related to "gender ideology or discriminatory equity ideology." Plaintiffs, twelve DoDEA students in elementary, middle, and high schools across four military bases worldwide, had projects about Black historical figures abruptly abandoned, heritage months stripped away, and Advanced Placement topics on which Plaintiffs would be tested stricken from the curriculum.

At the same time, Plaintiffs noticed that award-winning books were disappearing from the libraries in their DoDEA schools. Books like Ta-Nehisi Coates' Between the World and Me, which won a National Book Award for Nonfiction in 2015; Far from the Tree by Andrew Solomon, a National Book Critics Circle Award winner; and George by Alex Gino, which won a children's literature award from the American Library Association, were no longer available. Even worse, DoDEA would not tell Plaintiffs which books were removed or why. Plaintiffs had to file this lawsuit to learn that at least 596 books had been "quarantined" by DoDEA to comply with Secretary Hegseth's directives. Yet the Government continues to claim that Plaintiffs somehow need to do more to establish standing to challenge DoDEA's staggeringly sweeping book removals.

The District Court held that Plaintiffs had done more than enough to establish standing and recognized that Plaintiffs had suffered a grave constitutional injury, but the narrow injunction imposed by that court has created the absurd result that the vast majority of DoDEA students, and many Plaintiffs, continue to attend schools that are subject to ongoing unconstitutional censorship. This Court should affirm the District Court's ruling on the merits and expand the scope of the preliminary injunction to encompass all DoDEA schools.

## ARGUMENT

### I. PLAINTIFFS HAVE ESTABLISHED AND MAINTAINED STANDING.

As the District Court correctly held, "standing is to be determined as of the commencement of the suit," JA30, and the twelve Plaintiffs "meet this standard for standing on both claims." JA26. As the court noted, there was no real dispute as to standing at the Preliminary Injunction stage because the Government conceded that at least one Plaintiff met the threshold. JA28. Since filing the lawsuit, Plaintiffs have moved and changed schools frequently, JA252–JA253, but their claims remain live. JA273–JA275; JA276–JA278. In fact, because many Plaintiffs attend schools not covered by the narrow injunction, Plaintiffs' ongoing constitutional injuries are especially acute and non-speculative.

### a. The Government has repeatedly attempted to raise the bar for standing to challenge book removals.

Despite the Government's initial concession as to standing, on appeal it has argued for an ever more-stringent standing requirement for book removal challenges. Notably, there is still no dispute as to Plaintiffs' standing to challenge DoDEA's curricular materials.[1] *See* Dkt. No. 72. In its Response/Reply Brief, the Government goes so far as to argue that if and only "[i]f a plaintiff wants to check out an identified library book and is unable to because the book has been removed, that plaintiff can allege a particularized and concrete harm from the absence of the book." Appellants/Cross-Appellees Resp./Reply Br., Dkt. No. 68 at 20. Further, the Government argues that even if a Plaintiff recently went to their library and sought a specific title from the quarantine list, that would be insufficient to establish standing for prospective relief. *Id.* at 18. According to the Government, Plaintiffs must "show that they have 'concrete' plans to read specific books removed from a DoDEA library to which they have access, [because] their abstract desire to read some of these unnamed books does not suffice." *Id.* at 21. If the Government were

[1] The closest the Government comes to challenging Plaintiffs' standing to challenge curricular removals is to argue that "a willing speaker is an indispensable element of the right to receive information," Appellants/Cross-Appellees Resp./Reply Br., Dkt. No. 68 at 4, but this Court recently recognized a student-plaintiff's standing to challenge curricular removals without any mention of the need for a "willing speaker." *South Carolina State Conf. of NAACP v. Weaver*, No. 25-2216, 2026 WL 1957010, at *16–28 (4th Cir. July 7, 2026).

right, Plaintiffs would have had to specifically request by name every quarantined book before DoDEA had released any list in order to establish standing to challenge the systemwide censorship policy, and Plaintiffs would have to continually request every quarantined book by name in order to maintain standing. As the Government must know, that would be impossible.

In its brief, the Government goes even further to argue that O.H., a Plaintiff who is a current DoDEA student and who continues to actively seek specific quarantined books that are not available in their school library because of the challenged DoDEA action, somehow still does not have standing. Appellants/Cross-Appellees Resp./Reply Br., Dkt. No. 68 at 19. To support its impossible standard, the Government cites *TransUnion v. Ramirez*, 594 U.S. 413 (2021), but the cite is out of context and omits the explanatory parenthetical at the end of the sentence. *TransUnion* stands for the proposition that "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Id.* at 431. Here, Plaintiffs seek only injunctive relief. *TransUnion* simply requires that O.H. would be able to benefit from the injunctive relief sought and she meets that standard because Plaintiffs are challenging the scope of the current injunction in this Court with the goal of obtaining an injunction that would apply to O.H. regardless of which DoDEA school she currently attends. O.H. undoubtedly has standing.

The District Court found it "troubling" that the Government is demanding that Plaintiffs "identify specific books while persistently refusing to share that relevant information with them in the first place." JA33. That was true before DoDEA's quarantine book list was made public and remains true now because, as the District Court pointed out, "it is unclear whether the July 2025 list accurately captures all book removals at Plaintiffs' schools." JA32. A year later, Plaintiffs have every reason to believe – based on DoDEA's censorship directives and the narrow injunction – that DoDEA's book quarantines have continued apace in the 160 DoDEA schools not covered by the District Court's injunction. Article III exists to ensure there is a live controversy between the parties before the court and that undoubtedly exists here. Plaintiffs cannot be forced to chase shadows in the name of standing.

**b. Plaintiffs are suffering actual, ongoing, concrete constitutional injuries.**

The Government asserts that because Plaintiffs purportedly "fail to articulate the injury underlying their theory of standing," the Government can only presume that "the injury is that the student was prevented from accessing materials she was interested [in]." Appellants/Cross-Appellees Resp./Reply Br., Dkt. No. 68 at 20. But Plaintiffs clearly stated such an injury: denial of access to ideas on the basis of "partisan" and "political" motivations, because DoDEA removed books "to deny Plaintiffs access to ideas that they, by virtue of the Presidential EOs, found distasteful, 'radical' or 'divisive[.]'". JA45. This injury is consistent with *Board of*

*Education Island Trees Union Free School District No. 26 v. Pico*, 457 U.S. 853 (1982). Plaintiffs' injury is neither difficult to articulate given the Government's conduct, nor novel, despite the Government's efforts to minimize the precedential value of *Pico*—the only Supreme Court case addressing school library book removals.

This Court recently held that the removal of a book from school libraries constituted sufficient First Amendment injury-in-fact to establish standing. *S.C. State Conf. of NAACP v. Weaver*, No. 25-2216, 2026 WL 1957010, at *12–13 (4th Cir. July 7, 2026). The Fifth, Sixth, Ninth, Tenth, and Eleventh Circuits have all likewise recognized that school library book removal is a constitutional injury. *See Book People, Inc. v. Wong*, 91 F.4th 318, 324 (5th Cir. 2024) (affirming preliminary injunction of state law that required public school library books be classified and labeled based on sexual content); *Mozert v. Hawkins Cnty. Bd. of Educ.*, 827 F.2d 1058, 1069–70 (6th Cir. 1987) (upholding school officials' *refusal to ban* reading textbook over ideological objections to its content); *Minarcini v. Strongsville City Sch. Dist.*, 541 F.2d 577, 581–83 (6th Cir. 1976) (finding the removal of *Catch 22*, *God Bless You, Mr. Rosewater*, and *Cat's Cradle* from school library "because [the school board] found them objectionable in content" to violate student-plaintiffs' "First Amendment right to know"); *Nw. Assoc. Indep. Schs. v. Labrador*, 166 F.4th 1148, 1170 (9th Cir. 2026) (ordering preliminary injunction of state law that

prohibited public schools and libraries from disseminating books based on objectionable content); *C.f. Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026–32 (9th Cir. 1998) (protecting educators' right to *refuse to remove* books from school environment over objections to language therein); *Roberts v. Madigan*, 702 F. Supp. 1505, 1513 (D. Colo. 1989), *aff'd*, 921 F.2d 1047 (10th Cir. 1990) (holding that school's decision to remove the Bible from library shelves violated First Amendment academic freedom principles); *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1200, 1227 (11th Cir. 2009) (explaining that a school official's "decision to remove [a] book from school library shelves [which] was motivated by . . . a desire to promote political orthodoxy and by opposition to the viewpoint of the book" would violate the First Amendment).

Moreover, as amici point out, Student-Plaintiffs suffer real educational harm when DoDEA removes books. *See,* Brief of Amici Curiae Freedom to Read Found. et al., Dkt. No. 38-1 at 7–8, 15; Brief of Amici Curiae National Academy of Education, Dkt. No. 51 at 11–17 (citing various studies demonstrating that learning depends on connecting new material to student's identities and lived experiences, and denying students that opportunity leads to academic decline); *see also* Brief of Amici Curiae Secure Families Initiative and PFLAG, Dkt. No. 52 at 26–7 (noting that inclusive curricula increase classroom engagement and improve student

outcomes); Brief of Amici Curiae Vet Voice Foundation and Fred. T. Korematsu Center for Law and Equality, Dkt. No. 45 at 28–33 (same).

District Courts across the country have also repeatedly recognized that restricted access to library books constitutes a First Amendment injury. *See, e.g.*, *Right to Read Def. Comm. of Chelsea v. Sch. Comm. of City of Chelsea*, 454 F. Supp. 703, 712 (D. Mass. 1978) (enjoining school from removing book from its library based on objections that "its theme and language are offensive to a school committee," in violation of the First Amendment); *Salvail v. Nashua Bd. of Educ.*, 469 F. Supp. 1269, 1272, 1275–76 (D.N.H. 1979) (ordering return of materials removed from school library and enjoining school policies for review of controversial library materials); *Sheck v. Baileyville Sch. Comm.*, 530 F. Supp. 679, 681, 693 (D. Me. 1982) (enjoining the removal of a book from a high school library based on claims it contained objectionable language); *Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530, 547 (N.D. Tex. 2000) (enjoining relocation of children's books to adult's section of library for violating plaintiff's First Amendment right to receive information); *Virden v. Crawford Cnty.*, No. 2:23-CV-2071, 2024 WL 4360495, at *1 (W.D. Ark. Sept. 30, 2024) (school officials cannot require removal of books "containing LGBTQ themes" because that would violate students' First Amendment right to receive information); *Counts v. Cedarville Sch. Dist.*, 295 F. Supp. 2d 996, 1004–05 (W.D. Ark. 2003) (granting summary judgment against a school district for

making students' access to *Harry Potter* books contingent on parental permission, based on school board members' "personal distaste [of] . . . 'witchcraft'"); *Case v. Unified Sch. Dist. No. 233*, 895 F. Supp. 1463, 1469 (D. Kan. 1995) (ordering restoration of books with LGBTQ+ themes to school library, in accordance with "the majority of courts faced with a school book banning case[, which] have held that the removal of a book was unconstitutional"); *Penguin Random House LLC v. Gibson*, 796 F. Supp. 3d 1052, 1077–81 (M.D. Fla. 2025), *on appeal*, No. 25-13181 (11th Cir. Sept. 12, 2025) (finding unconstitutionally overbroad a state law provision prohibiting materials that "describe[] sexual conduct" from appearing in school libraries).

Despite extensive caselaw recognizing that "the vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools," *Shelton v. Tucker*, 364 U.S. 479, 487 (1960), the Government claims that DoDEA's book quarantines and curricular removals reflect "the wisdom of democratic accountability," Appellants/Cross-Appellees Resp./Reply Br., Dkt. No. 68 at 9. In support, the Government cites two cases in which the Court was considering non-citizens' right of access to public school employment and education. *See Ambach v. Norwick*, 441 U.S. 68 (1979) (holding that state may exclude non-citizens from public school teaching positions) and *Plyler v. Doe*, 457 U.S. 202, 230 (1982) (holding that states cannot deny noncitizens free public

education solely based on their immigration status). These cases addressed important questions of law, but none that are presented here. The Supreme Court referenced "fundamental values necessary to the maintenance of a democratic political system," *Ambach*, 441 U.S. at 77, and "the values on which our society rests," *Plyler*, 457 U.S. at 221, but those values are not identifiable in DoDEA's censorship. What the Supreme Court means by democratic values is something very different, having held that the First Amendment's protection for "diversity of ideas and programs is [] one of the chief distinctions that sets us apart from totalitarian regimes." *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949).

Considering DoDEA admits that it quarantined nearly 600 books to comply with Secretary Hegseth's directive, and the clear precedent protecting students' First Amendment rights in school libraries, there can be no doubt as to Plaintiffs' constitutional injury in fact. And notably, the Government has never challenged the traceability of Plaintiffs' injuries to DoDEA nor the redressability of Plaintiffs' injuries through an injunction. In sum, Plaintiffs have standing to challenge DoDEA's book quarantines, and the Preliminary Injunction should be affirmed.

## II. PLAINTIFFS ARE ENTITLED TO A SYSTEM-WIDE INJUNCTION.

The District Court abused its discretion by failing to award Plaintiffs complete relief when it adopted the Government's argument for a limited scope and limited

relief to "the five DoDEA schools at issue in this case." JA55.[2] As the District Court noted in its Order, the purpose of a preliminary injunction is "to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." JA23 (quoting *Perry v. Judd*, 471 F. App'x 219, 223 (4th Cir. 2012)).[3] If Plaintiffs demonstrate that the four *Winter* factors are met, the district court must issue the injunction and failure to do so is error. *Retail Energy Advancement League v. Brown*, 175 F.4th 551, 565 (4th Cir. 2026). A district court abuses its discretion in denying preliminary injunctive relief when it "rest[s] its decision on a clearly erroneous finding of a material fact, or misapprehend[s] the law with respect to underlying

---

[2] The Government claims that Plaintiffs waived this argument (Appellants/Cross-Appellees Resp./Reply Br., Dkt. No. 68 at 32), but Plaintiffs devoted a section of their Principal Brief to it (*see* Section II of Appellees/Cross-Appellants' Principal Brief at 40), identified the applicable legal standard (*id*. at 12–13), and listed facts and law supporting their argument (*id*. at 40–41). This is far short of the standard for waiver in the Government's only cited case, where a party sought to rely on a legal argument omitted from the argument section of his brief. *See Elam v. Early*, 138 F.4th 804, 817 (4th Cir. 2025) (finding waiver where party "pointed to the fact section" of their brief for argument because "[c]ontentions not raised in the argument section of the opening brief are abandoned." (quoting *Suarez-Valenzuela v. Holder*, 714 F.3d 241, 249 (4th Cir. 2013)), *cited by* Appellants/Cross-Appellees' Response/Reply Brief at 32.

[3] In the District Court, the Government sought to label this injunction as "mandatory" rather than "prohibitory." The District Court rejected that argument and held that it was a prohibitory injunction. JA24. Because the Government offers no argument on that point in their two briefs, the Government has conceded the prohibitory nature of the Injunction in this appeal.

issues in litigation." *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 127 F.4th 457, 465–66 (4th Cir. 2025) (quoting *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013) (en banc)).

**a. The District Court abused its discretion by denying DoDEA-wide relief on the basis that Plaintiffs did not bring a facial challenge.**

The District Court committed one such error of fact when it incorrectly claimed that Plaintiffs did not bring a facial challenge. *Compare* JA56 ("Plaintiffs have brought neither a facial challenge….") *with* JA81 ("EOs 14168, 14185, and 14190, both on their face and as implemented by Defendants, violate the First Amendment….") *and* JA83 ("EOs 14168, 14185, and 14190, both on their face and as implemented by Defendants, violate the First Amendment…."); *see also* Appellees/Cross-Appellants' Principal Brief at 40. To the extent that the District Court relied on the lack of a facial challenge to deny Plaintiffs' request for a system-wide injunction, JA56, this error alone is sufficient for a finding of abuse of discretion because a facial claim is not necessary for a system-wide injunction. *See S.C. Coastal Conservation League*, 127 F.4th at 465–66.

**b. The District Court abused its discretion by denying DoDEA-wide relief on the basis that DoDEA-wide relief was the equivalent of a nation-wide or universal injunction.**

The District Court's other serious error of law was holding that the Supreme Court's recent case in *Trump v. CASA*, 606 U.S. 831 (2025) ("*CASA*"), precluded a DoDEA-wide injunction here. The District Court noted that "universal injunctions

likely exceed the power Congress granted to federal courts" and that "the Fourth Circuit has similarly disfavored nationwide injunctions," and held that "[t]herefore, the Court denies Plaintiffs' request for relief across all DoDEA schools." JA56. The District Court emphasized the broad geographic scope of DoDEA schools and limited its order to the five schools that were then being attended by Plaintiffs. JA55–JA56. The Government urges this Court to adopt the same erroneous analysis when it argues that "[r]equiring systemwide changes to curricula and other practices at the behest of a handful of plaintiffs would implicate the same concerns once prompted by universal injunctions." Appellants/Cross-Appellees Resp./Reply Br., Dkt. No. 68 at 32–33. Yet the DoDEA-wide relief sought by Plaintiffs is neither a nationwide injunction nor a universal injunction. Plaintiffs seek DoDEA-wide relief in their motion because that is the only relief that will directly remedy the harm to *them*.

Subsequent events have proven that the District Court's Order limiting relief to the five schools attended by Plaintiffs was insufficient to remedy Plaintiffs' harm. Most of the Plaintiffs have already been forced to change schools. JA252–JA253. The Plaintiffs who still attend DoDEA schools do so without any relief and are experiencing the full First Amendment harms that the District Court's Order was designed to remedy, including the book removals and curriculum removals enjoined at the schools they used to attend. JA257–JA264. These transfers were foreseeable, given the frequent relocation of military families like those of Plaintiffs. *See* Keeley

Decl., JA126; Kenkel Decl., JA179; Henninger Decl., JA166; Tolley Decl., JA195, JA197; Young Decl. JA172; Caitlin Dunham, *It Takes a Family: How Military Spousal Laws and Policies Impact National Security*, 11 J. Nat'l Security L. & Pol'y 291, 301 (2021) ("Military families move frequently, often seven times more often than a civilian family…."). The Government offers no argument that the District Court's Order concerning five schools currently protects all the Plaintiffs, and none could be made.

*CASA* did not limit the availability of system-wide injunctions under circumstances like these. Indeed, "[t]he Supreme Court acknowledged in *CASA* that in some situations, an injunction requiring the defendant to cease the offending activity entirely may be the only way to provide complete relief to the plaintiff." *Reps. Comm. for Freedom of the Press v. Rokita*, 147 F.4th 720, 733 (7th Cir. 2025) ("*Rokita*"). The Court noted that "party-specific injunctions" may incidentally benefit non-parties, such as a nuisance suit that orders a neighbor to turn down loud music: the music is turned down for everyone even if only one neighbor complains, because that is the only way to "afford the plaintiff complete relief." *CASA, Inc.*, 606 U.S. at 851–52.[4] In fact, the Court left open on remand the possibility that the State

[4] The Government quotes *CASA* for the proposition that "complete relief" is a ceiling for relief, not the goal of a preliminary injunction. Appellants/Cross-Appellees Resp./Reply Br., Dkt. No. 68 at 32, 35. Yet the Supreme Court said this not in its holding, but in its characterization of the government's arguments in that case; thus,

parties in *CASA* were entitled to "a blanket ban on the enforcement of the [challenged] Executive Order" in that case because "[c]hildren often move across state lines or are born outside their parents' State of residence" and thus "a 'patchwork injunction' would prove unworkable." *Id.* at 853–54. This concern about the cross-border movement of children in *CASA* mirrors the movement of military families to different DoDEA jurisdictions, but here families have already moved and the narrow injunction has already been proven unworkable. This Court should therefore follow other lower courts and affirm that system-wide injunctive relief is available post-*CASA* under circumstances—like those here—where the facts justify it. *See, e.g.*, *Rokita*, 147 F.4th at 733–34 (post-*CASA*, remanding for district court to consider that "enjoining the [challenged] law's enforcement statewide may be necessary to provide the *plaintiffs themselves* with complete relief"); *Stinson v. Fayetteville Sch. Dist. No. 1*, 824 F. Supp. 3d 792, 812 (W.D. Ark. 2026) (post-*CASA*, permanently enjoining school defendants from posting materials violating the Establishment Clause "across all Defendant school districts" because "[a]n injunction limited to the child-Plaintiffs' classrooms would be too narrow to address the realities of their experiences"), *appeal docketed* No. 26-1722 (8th Cir. Apr. 17, 2026).

---

it is at best dicta, and more properly construed as its characterization of the government's position.

Given the likelihood of mid-year transfers to any other DoDEA school, even an injunction that runs to the students themselves is not sufficient to guarantee complete relief to Plaintiffs. Because of the likelihood of a mid-year transfer, any school in the DoDEA system would need to be ready to reverse the curriculum and book removals as soon as a student arrived, potentially overnight. As the Government recognized, implementing school curriculum requires planning, teacher training, and time taken from other priorities on the syllabus; putting books back onto library shelves requires that those titles be available, listed in library catalogues, and other preparation. Defs.' Opp. Prelim. Inj., Dist. Ct. Dkt. No. 29 at 29,. (noting the "disruption caused to DoDEA to recalibrate its school curricula to comply with any order" granting Plaintiffs relief). The Government offers no evidence or even argument, either in the District Court or in this appeal, that such accommodation would be possible.

Plaintiffs have, as the Government notes, moved in the District Court to modify the Order to run with the students instead of to the schools formerly attended by the students. This is not, as the Government would characterize it, a concession that such a modification would be "adequate" to provide Plaintiffs complete relief given the flaws listed above. Appellants/Cross-Appellees Resp./Reply Br., Dkt. No. 68 at 34. Rather it is, as the Government concedes, an attempt by Plaintiffs to "keep [] the relief ordered by the Court [in its initial Order] in place," which would protect

them at least as much as the District Court's Order did at the time it issued. Reply in Support of Mot. to Modify Prelim. Inj., Dist. Ct. Dkt. No. 85 at 5 n.3; *see* Appellants/Cross-Appellees Resp./Reply Br., Dkt. No. 68 at 34 n.9. If the Government's suggestion is adopted and Plaintiffs' Motion is construed as a concession that such a modified injunction is adequate, then this Court should construe the Government's nearly simultaneous motion for an identical student-centered injunction as a concession that Plaintiffs are entitled to such an order. *See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Modify the Injunction or, in the Alternative, Motion for Indicative Ruling, Dist. Ct. Dkt. No. 82 at 1 ("As [Plaintiffs] see it, the Court's injunction should follow the students with them should they transfer to a different school. Defendants do not oppose this relief."). This Court should then, on that basis, dismiss the Government's appeal.

## CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's ruling on the merits of Plaintiffs' Motion for Preliminary Injunction and expand the injunction to cover all DoDEA schools.

Dated: July 31, 2026

Respectfully submitted,

*/s/ Emerson J. Sykes*
EMERSON J. SYKES
ACLU FOUNDATION
125 BROAD STREET, 18TH FLOOR
NEW YORK, NY 10004
(212) 549-2500
esykes@aclu.org

MATTHEW W. CALLAHAN
EDEN HEILMAN
ACLU OF VIRGINIA FOUNDATION
P.O. BOX 26464
RICHMOND, VA 23261
(804) 644-8080
mcallahan@acluva.org
eheilman@acluva.org

COREY M. SHAPIRO
WILLIAM E. SHARP
ACLU OF KENTUCKY FOUNDATION
325 W. MAIN STREET, SUITE 2210
LOUISVILLE, KY 40202
(502) 581-9746
corey@aclu-ky.org
wsharp@aclu-ky.org

*Counsel for Plaintiffs-Appellees/Cross-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4,135 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Word in Times New Roman 14-point font, a proportionally spaced typeface.